**[ECF No. 11]**

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **NAOMI ROSIJI,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**VIRTUA OUR LADY OF LOURDES HOSPITAL, INC., et al.,**<br><br>**Defendants.** | **Case No. 26-0077 (CPO/EAP)** |

**MEMORANDUM ORDER**

This matter having come before the Court by way of *pro se* Plaintiff Naomi Rosiji's Motion to Proceed Under a Pseudonym, ECF No. 11 (Pl.'s Mot.); and Defendants Virtua Our Lady of Lourdes Hospital, Inc. ("Hospital") and Virtua Health, Inc. (collectively, "Defendants") having not filed any opposition; and the Court deciding this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1; and for good cause shown, the Court finds the following:

**A. Factual and Procedural Background[1]**

1. According to the Second Amended Complaint, on January 6, 2025, four armed perpetrators broke into Plaintiff's apartment, forcing Plaintiff and her family members to the ground. ECF No. 15 (Second Am. Compl. ("SAC")) ¶¶ 11-12. When Plaintiff stated that she did not have cash and high-value items demanded by the perpetrators, the main perpetrator struck her approximately seven times on the head with a handgun, causing her to lose consciousness. *Id.* ¶¶ 13-15.

[1] The following facts are taken from Plaintiff's Second Amended Complaint.

2. Upon regaining consciousness, Plaintiff sought emergency assistance for her injuries. *Id.* ¶¶ 17-19. An ambulance transported her to Defendant Hospital's emergency department. *Id.* ¶ 20. Plaintiff reported severe pain, which she rated a ten out of ten. *Id.* ¶ 23. CT imaging reports did not identify any acute intracranial hemorrhage, facial fracture, cervical fracture, or traumatic spinal malalignment. *Id.* ¶ 26. Plaintiff alleges that, upon learning that Plaintiff's injuries arose from a violent firearm-related crime, "the on-duty nurse displayed a dismissive and hostile demeanor toward Plaintiff." *Id.* ¶ 27. Plaintiff contends that the nurse rolled her eyes and stated to the treating physician, "She claims four men broke into her house and robbed her. I'm so tired of these people coming in here looking for drugs." *Id.* ¶ 28.

3. Plaintiff then showed the treating physician that metal wires from her orthodontic braces had become embedded in her mouth, causing intraoral lacerations that prevented her from properly opening her mouth. *Id.* ¶ 30. According to the SAC, the doctor looked at Plaintiff, rolled his eyes, turned away, and continued speaking into a handheld microphone without physically examining the lacerations or the broken orthodontic hardware embedded in Plaintiff's mouth. *Id.* ¶ 31.

4. Plaintiff claims that the nurse provided more continuous and timely attention to nearby patients who were not African-American. *Id.* ¶ 33. Despite knowing that Plaintiff could not easily open her mouth because of the embedded wires, the nurse offered Plaintiff oral medication and stated, "You bette[r] take this, this[] is all you get." *Id.* ¶ 35. After multiple requests for additional pain relief, the nurse administered Toradol by injection "in a rough and physically aggressive manner." *Id.* ¶ 37.

5. When law enforcement detectives arrived to interview Plaintiff, Defendant Hospital began to process her for discharge. *Id.* ¶ 39. At that time, she had active bleeding in her mouth,

broken and embedded orthodontic wires, and severe pain. *Id.* ¶¶ 40-41. Nonetheless, Plaintiff claims that she received no consultation with an oral surgeon or dentist, and the medical records do not document administration of a tetanus shot or antibiotics. *Id.* ¶¶ 42-43. She was instructed to use oral acetaminophen and ibuprofen despite having trouble opening her mouth. *Id.* ¶ 45. Additionally, Plaintiff alleges that although she expressed that she felt unsafe returning to her residence, Defendant Hospital did not arrange a social work evaluation, crisis intervention, victim advocacy, safe-discharge planning, or resource referrals. *Id.* ¶¶ 46-47.

6. From January 7 through January 10, 2025, Plaintiff claims her condition worsened, and she experienced chills, hot flashes, headaches, swelling, difficulty eating, and green drainage from her wounds. *Id.* ¶¶ 50-51. On January 10, 2025, she presented to Cooper University Hospital, where she underwent an emergency oral and maxillofacial incision and drainage procedure to treat the cellulitis and abscess. *Id.* ¶¶ 51-53.

7. Plaintiff claims she has experienced "substantial physical and psychological consequences" following the January 6, 2025 events. *Id.* ¶ 58. While the armed home invasion caused substantial initial trauma, she contends that Defendant Hospital's subsequent treatment of her aggravated that trauma. *Id.* ¶¶ 59-60. She was recommended for an intensive outpatient program. *Id.* ¶¶ 62-63. On May 10, 2025, Plaintiff sought hospital care during a psychiatric crisis "associated with the January 6 events and the distress of returning to the facility." *Id.* ¶ 64. Plaintiff also claims that she has developed thick scar tissue inside her mouth and face and that future cosmetic or reconstructive treatment may be required. *Id.* ¶¶ 65-66.

8. In April 2025, Plaintiff raised civil rights, statutory, and administrative concerns with Defendant Hospital's Patient Relations Department. *Id.* ¶ 67. The Hospital opened an investigation, and two weeks later, Plaintiff spoke by telephone with the Assistant Vice President

of the Emergency Department, Maureen Pisano. *Id.* ¶¶ 68-69. According to Plaintiff, Ms. Pisano stated that the nurse's behavior was "completely unacceptable," but that Plaintiff had received "good care" from the treating doctor. *Id.* ¶¶ 71-72. Ms. Pisano stated that a corporate review meeting would be held concerning Plaintiff's experience, but Plaintiff never received any written outcome from the review. *Id.* ¶¶ 73-74. Plaintiff then sent a "Notice of Intent to Sue and Demand for Preservation of Evidence." *Id.* ¶ 75.

9. On January 6, 2026, Plaintiff filed the current suit. ECF No. 1 (Compl.). She filed an Amended Complaint on March 3, 2026, ECF No. 4 (Am. Compl.), and following *sua sponte* screening pursuant to 28 U.S.C. § 1915(e)(2), the Court dismissed two counts of the Amended Complaint for failure to state a claim, ECF No. 5 (Order). Defendants filed an Answer on August 27, 2026. ECF No. 13.

10. On September 16, 2026, the Court granted Plaintiff leave to file a second amended complaint, ECF No. 14, which was filed on the docket on September 16, 2026, ECF No. 15. The SAC sets forth several causes of action, including (1) violation of the Emergency Medical Treatment and Labor Act ("EMTALA"), SAC ¶¶ 80-87 (Count I); (2) race discrimination in violation of Title VI of the Civil Rights Act of 1964, *id.* ¶¶ 88-96 (Count II); (3) race discrimination in violation of the New Jersey Law Against Discrimination, *id.* ¶¶ 97-104 (Count III); and (4) intentional infliction of emotional distress, *id.* ¶¶ 105-110 (Count IV).

11. Plaintiff now moves for an order permitting her to proceed pseudonymously, arguing that because this action arises from a violent armed home invasion and will require the disclosure of highly sensitive medical, psychiatric, and mental health information, "[p]ublic identification in connection with these deeply personal matters would result in significant and

continuing privacy harms that substantially outweigh the public's interest in disclosure." Pl.'s Mot. at 1.

12. Defendants did not oppose Plaintiff's motion. "[B]ut because a motion for leave to proceed under pseudonym intrudes on the public's right of access to judicial proceedings, the Court cannot grant the motion as unopposed without further analysis." *Doe v. Drexel Univ.*, No. 23-3555, 2023 WL 8373166, at *1 (E.D. Pa. Dec. 4, 2023). The Court thus conducts such analysis.

**B. <u>Legal Standard</u>**

13. "[O]ne of the essential qualities of a Court of Justice [is] that its proceedings should be public." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (quotation omitted). Federal Rule of Civil Procedure 10(a) encompasses that principle by "requir[ing] parties to a lawsuit to identify themselves in their respective pleadings." *Id.* (citing Fed. R. Civ. P. 10(a)). As such, our legal system operates under a strong presumption of public proceedings and publicly filed documents, including the identities of parties to those proceedings. *See id.*

14. Nonetheless, courts have recognized that "in exceptional cases" a party may proceed anonymously if the party can show "both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." *Id.* (citing *Doe v. Kamehameha Sch.*, 596 F.3d 1036, 1048 (9th Cir. 2010)). For example, courts have allowed pseudonyms in "cases involving 'abortion, birth control, trans[s]exuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality,'" *id.* (citing *Doe v. Borough of Morrisville*, 130 F.R.D. 612, 614 (E.D. Pa. 1990)), as well as in "cases involving victims of sexual assault." *Doe v. Princeton Univ.*, No. 20-4352, 2020 WL 3962268, at *2 (D.N.J. July 13, 2020) (citations omitted).

15. The United States Court of Appeals for the Third Circuit has set forth a non-exhaustive list of factors courts must balance when evaluating a litigant's request to proceed

pseudonymously. *Megless*, 654 F.3d at 409-10. The fundamental question in this analysis asks, "whether a litigant has a reasonable fear of severe harm that outweighs the public's interest in open litigation." *Megless*, 654 F.3d at 409 (citation omitted). The factors in favor of anonymity include:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Doe v. Coll. of N.J.*, 997 F.3d 489, 495 (3d Cir. 2021) (quoting *Megless*, 654 F.3d at 409).

16. The factors that weigh against anonymity include:

> (1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id*. (quoting *Megless*, 654 F.3d at 409).

17. Ultimately, "[t]he *Megless* factors require a fact-specific, case-by-case analysis." *Id.* "Decisions regarding whether to allow a party to proceed under a pseudonym are consigned to the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Homesite Ins. Co. of the Midwest v. Ewideh*, No. 22-1664, 2023 WL 426923, at *2 (M.D. Pa. Jan. 26, 2023) (citation omitted).

**C. <u>Analysis</u>**

18. Applying the above standard, the Court finds that the *Megless* factors weigh against Plaintiff's Motion to Proceed Under a Pseudonym.

19. The Court begins its analysis of the factors weighing in favor of anonymity by considering the extent to which the identity of Plaintiff has been kept confidential. *Megless*, 654 F.3d at 409. When a litigant takes "prior steps to maintain anonymity within the judicial system," then the first factor favors preservation of that anonymity. *Doe v. Rider Univ.*, No. 16-4882, 2018 WL 3756950, at *3 (D.N.J. Aug. 7, 2018). This factor is more likely to weigh in favor of anonymity where "a litigant has made substantial efforts to maintain anonymity" and "has limited his disclosure of the sensitive information to few other people." *Id.*; *see also Doe v. Rutgers*, No. 18-12952, 2019 WL 1967021, at *2 (D.N.J. Apr. 30, 2019) (holding that the first factor weighed in favor of anonymity where the plaintiff's name remained confidential, even throughout internal investigations related to allegations in the complaint and where plaintiff preemptively filed her complaint under a pseudonym to protect her identity from the initiation of the lawsuit). By contrast, courts in the Third Circuit generally do not permit the use of a pseudonym where a plaintiff's name has already been disclosed or where defendants already know of a plaintiff's identity. *See, e.g., Doe v. Felician Univ.*, No. 18-13539, 2019 WL 2135959, at *3 (D.N.J. May 15, 2019) (finding the first factor weighed in favor of disclosure because the plaintiff's identity had "already been revealed on the public docket by her counsel when filing the motion to proceed anonymously"); *Strike 3 Holdings, LLC v. Doe*, No. 24-9433, 2025 WL 37614, at *3 (D.N.J. Jan. 7, 2025) (finding the first factor weighed in favor of disclosure because defendant's name and address were not concealed in the filings, and they had remained unsealed on the public docket).

20. Here, Plaintiff did not file her initial Complaint, her Amended Complaint, or her Second Amended Complaint under a pseudonym. *See* ECF No. 1 (Compl.); ECF No. 4 (Am. Compl.); ECF No. 15 (SAC). Likewise, all related filings identify Plaintiff by her full name. *See generally* Dkt. Because Plaintiff's identity has repeatedly been publicly disclosed in connection with this case, this factor weighs against Plaintiff proceeding pseudonymously.

21. Second, the Court must consider "what harm is the litigant seeking to avoid, and [whether] the litigant's fear is reasonable[.]" *Megless*, 654 F.3d at 410. "That a plaintiff may suffer embarrassment or economic harm is not enough" to show a reasonable fear of harm. *Id.* at 408; *see also Rutgers*, 2019 WL 1967021, at *2 ("Plaintiff must demonstrate that she reasonably fears 'severe harm' that exceeds mere 'embarrassment.'" (quoting *Megless*, 654 F.3d at 408)).

22. Plaintiff alleges that because this matter will require disclosure of highly sensitive medical, psychiatric, and mental health information, "[p]ublic identification . . . in connection with these deeply personal matters would result in significant and continuing privacy harms that substantially outweigh the public's interest in disclosure." Pl.'s Mot. at 1. This allegation, however, does not identify any severe harm that Plaintiff reasonably fears will result from public disclosure of her identity. Therefore, this factor weighs against anonymity.

23. Third, the Court must consider the "magnitude of the public interest in maintaining the confidentiality of the litigant's identity[.]" *Megless*, 654 F.3d at 409 (quotation omitted). This factor supports anonymity if "other similarly situated litigants [would] be deterred from litigating claims that the public would like to have litigated[]" if they could not proceed pseudonymously. *Id.* at 410. Courts have determined that the public may have an interest in maintaining the litigant's anonymity when (1) "the litigant belongs to a particularly vulnerable class," including "minors, the mentally ill, and victims of sexual assault," *Doe v. AAVIJ, Inc.*, No. 24-11509, 2026 WL

765742, at *3 & n.1 (D.N.J. Mar. 18, 2026) (citing cases); (2) "the subject matter is highly personal," including matters involving "abortion, religious beliefs, and other extraordinarily personal areas," *id.* at *3 & n.2 (citing *Megless*, 654 F.3d at 408); or (3) "if undesirable consequences will flow from revealing the identity of the litigant[,]" such as where the litigant is a child or victim of a crime, *id.* at *3 & n.3 (citing cases).

24. Here, Plaintiff's Motion is premised primarily on her fear that her confidential medical records will be disclosed. This fear, however, may be alleviated by the entry of a Discovery Confidentiality Order under which Plaintiff will have the opportunity to designate her medical, psychiatric, and mental health records as "confidential," which would shield them from public view. Indeed, Plaintiff appears to recognize the availability of such relief by requesting, in the event her Motion is denied, "that the Court order the sealing or redaction of sensitive medical, psychiatric, and identifying information to protect Plaintiff's legitimate privacy interests while preserving the public's access to these proceedings." Pl.'s Mot. at 1. Therefore, this factor also weighs against anonymity.

25. Fourth, the Court must analyze the public's interest in ascertaining Plaintiff's identity. *See Megless*, 654 F.3d at 409. When a litigant "raises purely legal claims," this factor weighs in favor of proceeding under pseudonym. *Doe I v. Chaparro*, No. 25-13961, 2025 WL 3707509, at *3 (D.N.J. Dec. 22, 2025). In other words, "[t]he public disclosure of a plaintiff's name is not critical if the plaintiff's claims do not depend on his or her individual identity." *Rutgers*, 2019 WL 1967021, at *3. When a plaintiff's claims are "individualized and highly fact-intensive," this factor weighs against the plaintiff proceeding pseudonymously. *Id.*

26. Plaintiff's claims here are highly fact-intensive and arise directly from Defendants' alleged treatment of Plaintiff. Thus, this case does not present purely legal issues in which

Plaintiff's identity has little bearing on the claims asserted. Therefore, this factor weighs against anonymity.

27. Under the fifth factor, where a plaintiff may "sacrifice a potentially valid claim simply to preserve their anonymity[,]" the court may weigh that factor in favor of allowing the plaintiff to proceed under a pseudonym. *Megless*, 654 F.3d at 410. This factor is particularly relevant in cases of sexual assault or child abuse, where the court seeks to ensure "that victims of sexual assault can vindicate their claims and that the fear of public humiliation does not discourage these plaintiffs." *Rutgers*, 2019 WL 1967021, at *3.

28. Here, Plaintiff has offered no indication that, absent the ability to proceed pseudonymously, she will decline to pursue this action. The Court finds that this factor also weighs against anonymity.

29. The last *Megless* factor in favor of anonymity asks, "whether the party seeking to sue pseudonymously has illegitimate ulterior motives." *Megless*, 654 F.3d at 409 (quotation omitted). The Court has no information suggesting that Plaintiff has such an illegitimate ulterior motive. Therefore, this factor is neutral.

30. The Court next turns to the *Megless* factors that "weigh against anonymity." *Coll. of N.J.*, 997 F.3d at 495 (quoting *Megless*, 654 F.3d at 409). First, as noted above, "[t]here is universal public interest in access to the identities of litigants." *Megless*, 654 F.3d at 411. "[T]he public's interest in open judicial proceedings always runs counter to a litigant's interest in anonymity—the question is whether the interest in anonymity outweighs the public's interest." *Coll. of N.J.*, 997 F.3d at 496. Here, Plaintiff's interest in anonymity does not outweigh the public's interest in open judicial proceedings; therefore, this factor weighs against anonymity.

31. Second, the Court must consider "whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained[.]" *Megless*, 654 F.3d at 409 (quotation omitted). There is not. Neither Plaintiff nor Defendants are public figures, and "the subject matter of this litigation is common." *Doe v. New Jersey*, No. 24-9531, 2024 WL 4880260, at *4 (D.N.J. Nov. 25, 2024). Therefore, this factor does not weigh against anonymity.

32. Finally, the Court considers "whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated." *Megless*, 654 F.3d at 409 (quotation omitted). Here, neither Defendants, the public, nor the press have expressed opposition to Plaintiff's Motion. Therefore, this factor has no bearing on the analysis.

33. Having reviewed the relevant *Megless* factors, the Court finds that, on balance, they weigh against Plaintiff's request for relief. Plaintiff's most compelling basis for anonymity is her privacy interest in her medical, psychiatric, and mental health records. That privacy interest, however, may be protected through less restrictive means—including an appropriate Discovery Confidentiality Order, and where warranted, appropriate sealing or redaction of sensitive information filed with the Court—rather than through the broader measure of concealing Plaintiff's identity throughout this litigation. The Court further notes that Plaintiff has not maintained her anonymity thus far, and that the subject matter of this case is not one in which Plaintiff's privacy interest outweighs the public's interest in open judicial proceedings. Therefore, for the reasons set forth above,

**IT IS** this **30th** day of **October 2026**,

**ORDERED** that Plaintiff's Motion to Proceed Under a Pseudonym, ECF No. 11, is **DENIED**; and it is further

**ORDERED** that all further filings in this case shall include Plaintiff's legal name in the caption; and it is further

**ORDERED** that, as previously scheduled, the Court will conduct an initial conference on **November 18, 2026, at 1:00 p.m. in Courtroom 5C**. ECF No. 18 (Order). At that time, the Court will address the entry of an appropriate Discovery Confidentiality Order.

s/Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc: Hon. Christine P. O'Hearn, U.S.D.J.